[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15361
_____

D.C. Docket No. 1:13-cv-04279-WBH

MICHAEL WADE NANCE,

                                        Petitioner-Appellant,

versus

WARDEN, GEORGIA DIAGNOSTIC PRISON,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 30, 2019)

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit Judges.

ED CARNES, Chief Judge:

      Michael Wade Nance, a convicted murderer under sentence of death in Georgia, appeals the district court's denial of his 28 U.S.C. § 2254 petition. There

are two claims before us. One involves the use of a stun belt security device at his resentencing trial. The other is a sentence stage ineffective assistance claim involving mitigating circumstances, which is a type of claim common in federal habeas challenges to death sentences. What is uncommon about this claim is that the petitioner does not contend that his trial counsel were deficient in any way in uncovering mitigating circumstances. Nor could petitioner credibly do so, given the effort that went into that part of the defense by the time of the resentencing trial. Instead, the claim is one of those rare ones that concedes enough was done to discover mitigating circumstances and questions only the strategic decisions trial counsel made about which circumstances to present and how.

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case have already been thoroughly set out by the Georgia Supreme Court in Nance v. State, 526 S.E.2d 560 (Ga. 2000), Nance v. State, 623 S.E.2d 470 (Ga. 2005), and Humphrey v. Nance, 744 S.E.2d 706 (Ga. 2013). There is no point in our repeating all, or even most, of those facts. It is enough to note here that Nance robbed a bank, and in the process threatened to kill some of the tellers. Nance, 526 S.E.2d at 563. They were not killed, but Gabor Balogh, an innocent driver who was backing his car out of a parking spot at a nearby store, was not as fortunate. Id. at 563–64. In order to steal Balogh's car Nance shot him to death as he was pleading "No, no." Id. at 564.

After a three-week trial in 1997, the jury returned a verdict finding Nance guilty of malice murder and five other crimes and sentenced him to death for the murder. Id. at 562 n.1. The trial court entered a judgment pronouncing him guilty of the crimes and imposing a death sentence. Id. On direct appeal, the Georgia Supreme Court affirmed Nance's convictions but reversed his death sentence "due to a prospective juror being improperly qualified to serve on the jury." Nance, 623 S.E.2d at 472. A new sentencing trial in 2002 resulted in a new death sentence, which the Georgia Supreme Court affirmed on direct appeal. Id.

Nance then filed a petition for collateral relief in the state trial court. That court granted him relief from the death sentence after concluding that Nance had received ineffective assistance of counsel at the resentencing trial. The State appealed, and in 2013 the Georgia Supreme Court reversed. Nance, 744 S.E.2d at 709. At the end of 2013, Nance filed a 28 U.S.C. § 2254 petition in federal district court. In 2017 the district court denied relief but granted a certificate of appealability on two of Nance's claims: "(1) his claim that his trial counsel [were] ineffective in presenting his case in mitigation and (2) his claim that the trial court erred in requiring [him] to wear a stun belt during the [resentencing] trial."

## II. DISCUSSION

The Georgia Supreme Court rejected Nance's ineffective assistance claim when it reversed the state trial court's grant of collateral relief, and it rejected his

stun belt claim when it affirmed the sentence on direct appeal from the resentencing trial.  Nance, 744 S.E.2d at 720–31; Nance, 623 S.E.2d at 473.  Because both rejections were on the merits, federal habeas relief is barred unless the rejection of one or both claims (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

It was meant to be, and is, difficult for a petitioner to prevail under that stringent standard.  Harrington v. Richter, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011); see also Burt v. Titlow, 571 U.S. 12, 19, 134 S. Ct. 10, 16 (2013) ("AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.").  Section 2254(d) reflects Congress' decision to restrict federal courts' authority to grant habeas relief to cases in which the state court's decision unquestionably conflicts with Supreme Court precedent.  Harrington, 562 U.S. at 102, 131 S. Ct. at 786.  To justify federal habeas relief, the state court's decision must be "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  Burt, 571 U.S. at 19–20, 134 S. Ct. at 16 (quotation marks omitted).  "[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal

habeas relief must be denied." Meders v. Warden, 911 F.3d 1335, 1349 (11th Cir. 2019) (quoting Holsey v. Warden, 694 F.3d 1230, 1257 (11th Cir. 2012)) (quotation marks omitted).

### A.  The Ineffective Assistance of Counsel Claim

As we have mentioned, Nance does not contend that his trial counsel should have, or profitably could have, done more to investigate and discover mitigating circumstances evidence for use at his resentencing trial.  And it is no wonder that he doesn't.

For the first trial, in addition to consulting with the attorneys who had represented Nance on the related federal bank robbery charges, and reviewing all of their files, Nance's two counsel hired multiple investigators and mitigation specialists to help them conduct their investigation.  As part of their investigation, counsel traveled to Nance's hometown in Kansas to interview witnesses about his childhood, mental development, history of drug and alcohol abuse, and the abuse that he suffered at the hands of his adoptive father.  They also consulted with two mental health professionals who evaluated Nance before his federal bank robbery trial, retained a toxicologist to calculate the concentration of tear gas in Nance's car after dye packs that had been hidden in the stolen currency exploded, interviewed at least four individuals with expertise in dye packs, subpoenaed information from the dye pack manufacturer, interviewed the state microanalyst

5

who tested Nance's clothing, inspected the physical evidence in the case, visited the crime scene, examined the material the State provided during discovery, and interviewed the State's experts.  Not only that, but Nance's counsel also obtained the state's forensic report, emergency medical technician records, the murder victim's autopsy report, police records, records from federal agencies, prison records, marriage and divorce records, birth and death certificates, medical records, school records, and probation records, among other documents that might be relevant to Nance's case.  It is as thorough an investigation into mitigating circumstances as we have ever seen.[1]

Then, in preparing for the resentencing trial, Nance's counsel reviewed their performance in the original trial.  Once again, they hired multiple investigators and a mitigation specialist to help them conduct their investigation.  One of them traveled to Nance's hometown in Kansas and spent several days interviewing mitigation witnesses.  They met with the psychologist who had testified in mitigation at Nance's original trial and, after reviewing his testimony, they concluded that his testimony had not been helpful.  Instead of using that psychologist again, with the help of the mitigation specialist, they retained an expert on prison adaptability who conducted neuropsychological and intellectual

---

[1] Given the excellent job that they did, Nance's two trial counsel deserve to be named here.  They are Johnny R. Moore, a sole practitioner from Lawrenceville, Georgia, who is now retired, and Edwin J. Wilson, who is a sole practitioner from Snellville, Georgia.

6

testing on Nance, interviewed his mother and siblings, and reviewed his records. They believed that this expert's testimony about Nance's prison adaptability would be especially important to the jury because, in their experience, jurors deliberating between a life sentence or death "look into whether or not they think this person is going to be a danger to other prisoners and prison guards." In that vein, they also located several deputies to testify about Nance's good behavior in prison. Over several nights just before the resentencing trial, they met individually with all of the mitigation witnesses to prepare their testimony.

Faced with the impossibility of finding fault with the investigation trial counsel conducted, Nance's present attorneys have claimed that trial counsel were ineffective in how they *used or failed to use* all that they learned in their extensive investigation. More specifically, his present attorneys fault counsel for deciding not to present more of the mitigating circumstance evidence, especially more expert witnesses, than they did.[2]

---

[2] Nance also argues that his trial counsel were ineffective at the resentencing hearing for failing to adequately present evidence of remorse. The district court denied that claim because it was unexhausted and procedurally defaulted. Nance did not contend otherwise in the district court, and he did not contest the district court's ruling on that claim in his initial brief to this Court. It has been abandoned. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1353 (11th Cir. 2005) (explaining that a petitioner's failure to address a procedural bar in his initial brief forfeits any argument against it); Mills v. Singletary, 63 F.3d 999, 1008 n.11 (11th Cir. 1995) ("The law in this circuit is clear that arguments not presented in the district court will not be considered for the first time on appeal.").

It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence. Even a dozen years before there was any AEDPA deference, the Supreme Court noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984); accord, e.g., Hinton v. Alabama, 571 U.S. 263, 274, 134 S. Ct. 1081, 1088 (2014) (per curiam); Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420 (2009).

Decisions about which experts to call and which issues to press during trial are, without a doubt, strategic. See Hinton, 571 U.S. at 275, 134 S. Ct. at 1089 ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choice' that, when made 'after thorough investigation of the law and facts,' is 'virtually unchallengeable.'") (alterations and citation omitted); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 956 (11th Cir. 2016) (same); see also Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 5 (2003) (per curiam) ("When counsel focuses on some

issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").

In the post-AEDPA era, it is even more difficult to obtain federal habeas relief on a strategy-questioning ineffective assistance claim, or any type of ineffectiveness claim for that matter. Strickland mandated one layer of deference to the decisions of trial counsel. 466 U.S. at 689, 104 S. Ct. at 2065 ("Judicial scrutiny of counsel's performance must be highly deferential."); id. ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."). When § 2254(d) was amended by AEDPA in 1996, that added another layer. See Harrington, 562 U.S. at 105, 131 S. Ct. at 788 ("The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (citations omitted). Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

This is not one of those rare, or "rarer still," cases. At the resentencing trial, Nance's counsel called no fewer than 23 mitigation witnesses, whose testimony

9

covered, among other things, his difficult family life; his adoptive father's alcoholism, aloofness, and occasionally abusive behavior; his long-term cognitive difficulties and low IQ; his history with drugs and alcohol, particularly the bad influence of his drug-using uncle; and Nance's adaptability to prison life, including both expert testimony that he was "very adaptable" and the testimony of seven sheriff's deputies that he had been a "model" inmate in jail while awaiting his resentencing trial.  Nance, 744 S.E.2d at 718–19, 720–21.  Writing for the Georgia Supreme Court, Justice Hunstein thoroughly and convincingly explained why the strategic decisions that Nance's counsel made regarding the resentencing trial did not fall outside the "wide range of reasonable professional assistance" that the Sixth Amendment requires.  Harrington, 562 U.S. at 104, 131 S. Ct. at 787 (quotation marks omitted).  Her opinion sets out in detail the evidence that trial counsel elicited on Nance's intellectual impairments and the effect of the dye packs, and it explains why their decision not to call an expert about Nance's possible brain damage was reasonable under the circumstances.  Nance, 744 S.E.2d at 720–29.  It also explains why, even if counsel's performance was somehow deficient, it did not prejudice Nance.  Id. at 722–23, 728, 729–31.  Having reviewed Justice Hunstein's thoughtful opinion, we cannot say that it was objectively "unreasonable," Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct.

1933, 1939 (2007), or that every fairminded jurist would disagree with it, Harrington, 562 U.S. at 101, 131 S. Ct. at 786. Far from it.

## B. The Stun Belt Claim

Nance also claims that the state trial court violated his constitutional rights by requiring him to wear a stun belt under his clothes during the resentencing trial without holding a new evidentiary hearing to determine whether the restraint was necessary, and that the Georgia Supreme Court's holding to the contrary conflicts with clearly established federal law set out by the United States Supreme Court. It did not; and it does not.

A state court's decision cannot be contrary to, or involve an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), unless there is a Supreme Court decision on point. And there is none on this point. The Supreme Court has never addressed whether and under what circumstances a trial court may require a defendant to wear a stun belt. Although a petitioner need not have a Supreme Court precedent with identical facts to succeed, see Panetti v. Quarterman, 551 U.S. 930, 953, 127 S. Ct. 2842, 2858 (2007), he does have to have one that is close enough to clearly establish the law that he claims the state courts unreasonably applied. The decisions Nance cites are not close; they are materially distinguishable. They do not clearly establish the law that his claim needs. See White v. Woodall, 572 U.S.

11

415, 427, 134 S. Ct. 1697, 1706–07 (2014) ("[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question.") (quotation marks omitted).

The first three decisions that Nance relies on all involve <u>visible</u> security restraints and the unique constitutional problems they present — namely, the impact that they have on the jury's perception of the defendant and the public's perception of the judicial process. In <u>Deck v. Missouri</u>, 544 U.S. 622, 630–33, 125 S. Ct. 2007, 2013–14 (2005), the Court held that one reason state trial courts could not routinely shackle defendants during trial is that it would undermine the defendant's presumption of innocence in the eyes of the jury, make the defendant appear dangerous to the jury, and threaten the dignity of the judicial process and the public's trust in it. In <u>Holbrook v. Flynn</u>, 475 U.S. 560, 569, 106 S. Ct. 1340, 1346 (1986), the Court held that it was not presumptively unconstitutional to seat additional uniformed officers in the front row of the courtroom because their presence would not necessarily impact the jurors' impression of the defendant. The Court reasoned that because jurors "may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence," the officers "need not be interpreted as a sign that [the defendant] is particularly dangerous or

culpable." Id.  And in Illinois v. Allen, 397 U.S. 337, 343–44, 90 S. Ct. 1057, 1060–61 (1970), the Court held that a disorderly defendant could be removed from the courtroom and added in dicta that doing so was preferable to binding and gagging him because "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant" and "be something of an affront to the very dignity and decorum of judicial proceedings."

The visibility of the security measure at issue was central to the reasoning of all three of those decisions, and the Court limited its holdings accordingly.  See Deck, 544 U.S. at 624, 125 S. Ct. at 2009 ("We hold that the Constitution forbids the use of visible shackles during the penalty [and guilt] phase . . . unless that use is justified by an essential state interest . . . specific to the defendant on trial.") (quotation marks omitted, first emphasis added); id. at 629, 125 S. Ct. at 2012 ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination . . . that they are justified by a state interest specific to a particular trial.") (emphasis added); id. at 632, 125 S. Ct. at 2014 ("[G]iven their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case.") (emphasis added); id. at 633, 125 S. Ct. at 2014 ("[C]ourts cannot routinely place defendants in shackles or other physical restraints visible to the jury during the penalty phase of a capital proceeding.") (emphasis added); see also

Holbrook, 475 U.S. at 568–69, 106 S. Ct. at 1345–46 ("The first issue to be considered here is thus whether the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial . . . should be permitted only where justified by an essential state interest specific to each trial.") (emphasis added); id. at 569, 106 S. Ct. at 1346 ("[R]eason, principle, and common human experience counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial.") (citations and quotation marks omitted, emphasis added); id. at 572, 106 S. Ct. at 1347 (explaining that federal courts can only "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial") (emphasis added).  And in Allen the Court explained that "the sight of shackles and gags" might affect the jury to the detriment of the defendant as well as be an affront to the dignity and decorum of the trial.  397 U.S. at 344, 90 S. Ct. at 1061 (emphasis added).

The Georgia Supreme Court concluded that Nance's stun belt was not visible to the jury or the public because it was worn under his clothes.  See Nance, 623 S.E.2d at 473 ("Unlike shackles, [the stun belt] is worn under the prisoner's clothes and is not visible to the jury.").  And Nance has not pointed to any

evidence to show that finding was "an unreasonable determination of the facts in light of the evidence," 28 U.S.C. § 2254(d)(2).[3]

The holdings in Deck and Holbrook, as well as the dicta in Allen, are not applicable to security devices or measures that are not visible. And a federal habeas court's focus is on Supreme Court holdings, not potential extensions of them. See Woodall, 572 U.S. at 426, 134 S. Ct. at 1706 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error."); id. at 419, 134 S.Ct. at 1701 ("Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions.") (quotation marks and alteration omitted); see also Carey v. Musladin, 549 U.S. 70, 76–77, 127 S. Ct. 649, 653–54 (2006) (holding that a state court did not unreasonably apply clearly established federal law because the Court had not yet extended its existing precedent to the conduct at issue in the petitioner's case). At the very least,

---

[3] In the final paragraph of his brief to this Court, Nance does argue that the Georgia Supreme Court's rejection of his stun belt claim was based on an unreasonable determination of the facts. But he makes no assertion that the stun belt was visible. Instead, he argues that a factual error marred the reasoning that led the Georgia Supreme Court to affirm the denial of another evidentiary hearing on whether he should be required to wear a stun belt. The Georgia Supreme Court stated that "the only change in circumstance since the 1996 hearing offered by Nance was the passage of time and this was obvious to the trial court without the need for a second hearing." Nance, 623 S.E.2d at 473. Far from being unreasonable, this determination was accurate; Nance never identified, much less proved, any substantial change in circumstances in support of his request for a new hearing.

fairminded jurists could disagree about whether the holdings of the three decisions that Nance primarily relies on clearly establish that it was constitutional error for the state trial court to require Nance to wear a stun belt that was not visible to the jury.

The other Supreme Court decision that Nance points to is Riggins v. Nevada, 504 U.S. 127, 112 S. Ct. 1810 (1992). The holding of that decision is irrelevant to Nance's case. In Riggins the Supreme Court held that a state trial court could force a mentally ill inmate to continue taking prescribed antipsychotic drugs during the course of his trial if there was an overriding justification and the drugs were medically appropriate. Id. at 134–35, 112 S. Ct. at 1815. The Court did not address security restraints and did not purport to establish a broader rule about court practices that might otherwise interfere with an inmate's ability to participate in the trial. Indeed, the Court noted that its decision was limited to the facts in the record of that case. Id. at 133, 112 S. Ct. at 1814 ("The record in this case narrowly defines the issues before us.").

Finally, Nance cites this Court's own decision in United States v. Durham, 287 F.3d 1297, 1306 (11th Cir. 2002), where we held that the "decision to use a stun belt must be subjected to at least the same close judicial scrutiny required for the imposition of other physical restraints." (Quotation marks omitted.) Unlike the Supreme Court decisions Nance relies on, our Durham decision actually does

involve stun belts. If Nance were a federal prisoner, § 2254(d)(1) would not apply and Durham might require us to vacate his sentence. But he is not a federal prisoner and § 2254(d)(1) does apply. As a result, the "clearly established Federal law" is limited to that which has been "determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has implied that it is getting a little tired of reiterating that directive "time and again." See Lopez v. Smith, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and again, that [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'") (citations omitted); Parker v. Matthews, 567 U.S. 37, 48–49, 132 S. Ct. 2148, 2155 (2012) (per curiam) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' It therefore cannot form the basis for habeas relief under AEDPA.") (citation omitted); Glebe v. Frost, 574 U.S. ___, 135 S. Ct. 429, 431 (2014) (per curiam) (same); Renico v. Lett, 559 U.S. 766, 778–79, 130 S. Ct. 1855, 1865–66 (2010) (same); Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (same); see also, e.g, Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 764 n.14 (11th Cir. 2010) ("A federal court of appeals decision, even one with a holding directly on point, does not clearly establish federal law for § 2254(d)(1) purposes.").

Nance argues that we should sidestep this non-side-steppable rule by holding that Durham is enough because it "demonstrate[s]" the law that the Supreme Court has clearly established. Under Nance's "reasoning," every circuit court decision on any point would demonstrate the law the Supreme Court has clearly established on that point, even if the Supreme Court did not yet know it. And § 2254(d)(1) would be effectively rewritten to insert before the semicolon the words "or by any federal court of appeals." And we would need to overrule every one of those decisions in which the Supreme Court has told us "time and again" that the decisions of federal courts of appeals do not clearly establish federal law for § 2254(d)(1) purposes. All of that is beyond our authority. So we will follow the Supreme Court's instruction that circuit precedent may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced." Marshall v. Rogers, 569 U.S. 58, 64, 133 S. Ct. 1446, 1450 (2013).

The Supreme Court — the only Court that can clearly establish federal law for purposes of habeas review — has not yet decided whether the use of stun belts (or materially similar restraints) is constrained by the Constitution, nor has it established a standard for evaluating such claims. For that reason, the Georgia Supreme Court's decision on this issue is not "contrary to" and does not involve

"an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1).

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 30, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-15361-P
Case Style: Michael Wade Nance v. Warden
District Court Docket No: 1:13-cv-04279-WBH

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call David L. Thomas at (404) 335-6171.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: David L. Thomas
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion